Mr. Justice Clayton
delivered the opinion of the court.
The bill in this case pertains to a great many important transactions, and does not easily admit of abridgment.
It sets out with stating that the defendants, Watt, Burke' <fc Co., were the commission merchants and agents of the complainant, through a series of years, and that he intrusted his interests to them with unlimited confidence. That this was especially true in regard to Watt, one of the defendants. It also states, that after several years of transactions of this sort, involving a very large amount, he was, upon settlement, found to be in debt to the defendants to the sum of $26,000, for which he executed his note. Suit was afterwards brought upon this in the United States’ court, for the southern district of Mississippi, and judgment rendered thereon, in the fall of 1839, for $29,990. That he afterwards enjoined this judgment on the Chancery side of that court, but that the suit was compromised, and the bill dismissed by agreement.
It also states, that, in pursuance of this compromise and agreement, he shipped his subsequent crops of cotton, to the house in New Orleans, with the understanding that the net proceeds, after deducting current expenses, were to be applied to the payment of the judgment. From these shipments the defendants, in June, 1842, owed him a balance of $26,433, and in July, 1844, the balance from the same source had increased to $70,000. Notwithstanding this state of things, the complainant was induced to believe, by Watt, that there was at that time, still due on said judgment some $20,000.
Complainant then owed various other debts, some of which *420 were about to be pressed against him. About this time, Watt proposed to the complainant, that the marshal should levy on some ninety slaves to satisfy the balance which he alleged to be due on said judgment, and agreed that he would buy them in, and after the purchase would return them to the complainant, “ to remain in his possession and employment, that by their labor he might pay off his other debts, pay what was due upon this judgment, and thus secure himself a home.” Confiding in this agreement, complainant assented to the levy and sale. At the sale, Watt purchased nearly all of the negroes, at a price so inadequate, that the complainant was subjected to a sacrifice of at least $20,000.
• The bill farther states, that the negroes were not immediately returned to the home of the complainant, after the sale, as had been agreed upon, but that Watt prevailed upon him to leave home with his family for Kentucky, so as to leave Watt in possession of the place, to give color and plausibility to the purchase. That he accordingly did so. Watt had the negroes carried to the place; and that, during his absence, the plantation, his homestead, was sold by the contrivance of Watt, under a decree of foreclosure of a mortgage in favor of Alvarez Fisk, and that, after this sale, the slaves purchased by Watt were all carried off by him.
The bill charges, that the defendants failed to comply with the agreement of 1840, to credit the judgment with the amount of cotton delivered by complainant; that, in point of fact, the judgment was satisfied at the time of the sale under it; and that the sale is therefore void. It states that the defendants charged usurious interest, and sets forth various other transactions, about which it seeks an account.
It prays that' the sale of the slaves be set aside, and a decree for their re-delivery to complainant. It also prays for a discovery and account of the cotton delivered under the agreement of 1840, and of the dealings of the parties subsequent to that time, and a decree for such amount as. may be due to complainant upon all these transactions. A general demurrer was filed to the bill, which was overruled in the court below, and the *421 defendants directed to answer within sixty days. From this decree an appeal was taken to this court.
It is a principle of equity subject to very few exceptions, that a party to a fraudulent transaction can, as complainant, obtain no relief in equity against it. Standing in pari delicto, the court will not interfere in his behalf. James v. Bird’s Administrator, 8 Leigh, 510; 1 Story, Eq. 296, cases collected in note. This principle precludes the complainant from all relief touching the sale of the negroes. If Watt was guilty of a fraud, the complainant-was a willing party to it, and only objects when his share of the spoil is refused’ him. His own conduct has cut him off from all claim upon the interposition of a court of equity. To this extent the decree of the chancellor was correct.
But the matter of account stands on a different basis. If the defendants are indebted in the several sums set forth in the bill, the fraudulent conduct of the complainant, touching the sale, ought not to preclude him from relief in regard to the accounts. But it is said, upon this point, that the remedy is ample and complete at law, and the bill should therefore be dismissed.
Equity has concurrent jurisdiction with courts of law, in reference to numerous and complicated matters of account. The fact that there may be a remedy at law less convenient, and less subservient to the ends of justice, does not deprive the court of chancery of its right to interpose. In matters of account, extending over a variety of transactions, the remedy in equity is deemed more ample and complete, and tends to prevent a multiplicity of suits. 1 Story, Eq. 439. This part of the bill should therefore be answered, especially as the defendants are called upon for a discovery in regard to these matters. This account, however, must be confined to the transactions which took place subsequent to the judgment.
The decree overruling the demurrer is affirmed, and the cause remanded for farther proceedings, in accordance with this opinion.
Decree affirmed.